# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CONNIE L. MAYO, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. CIV-06-404-FHS-SPS |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

The claimant Connie L. Mayo requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision should be REVERSED and REMANDED.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act only "if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the

national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of [the] evidence must

---

[1] Step one requires the claimant to establish she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work the claimant can perform existing in significant numbers in the national economy, taking into account her age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on July 2, 1963, and was forty-two (42) years old at the time of the administrative hearing. She has a high school education with technical training as a certified nurse's aide (CNA) and has previously worked as a CNA and as a sewing machine operator. She alleges she has been unable to work since October 2, 2001, due to a mental impairment, high white blood cell count, and back and foot pain.

## Procedural History

On February 19, 2004, the claimant filed an application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-34. The application was denied. ALJ Lantz McClain conducted a hearing and found the claimant was not disabled on February 23, 2006. The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. 20 C.F.R. § 404.981.[2]

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant's "mood and thought disorder due to history of polysubstance abuse, mild degenerative lumbar spine changes, left ankle questionable small avulsion fracture, benign

---

[2] The claimant previously filed an application for benefits on April 18, 2001. That application was denied on October 1, 2001, and the ALJ found no reason to reopen the denial in this case. Consequently, the earliest possible onset date in this case is October 2, 2001. (Tr. 18).

mass involving the left foot, and elevated white [blood] cell [] count due to dental carries [sic]" were severe impairments (Tr. 19), but that she had the residual functional capacity ("RFC") to perform light work requiring nothing more than understanding, remembering and carrying out simple repetitive tasks, and only incidental contact with the public (Tr. 25-26). The ALJ concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform existing in significant numbers in the regional and national economies, *e. g.,* housekeeper, inspector, and assembler (Tr. 26).

## Review

The claimant contends that the ALJ erred: (i) by failing to properly evaluate the opinions of her treating physician, Dr. James T. Howard; and, (ii) by failing to re-contact Dr. Howard about his opinions and thereby failing to adequately develop the record. The undersigned Magistrate Judge finds merit in these contentions, so the decision of the Commissioner should be reversed and the case remanded to the ALJ for further proceedings.

The claimant received medical treatment at Carl Albert Community Mental Health Center (CACMHC) in McAlester, Oklahoma from August 1999 to August 2001 (Tr. 346-405), and at the Choctaw Nation Hospital in Talihina, Oklahoma and the McAlester Health Clinic in McAlester, Oklahoma thereafter (Tr. 206-306, 424-27, 432-91). She saw several doctors for her physical ailments but received her behavioral health treatment from Dr. Howard (Tr. 208-15, 308, 428-31, 491). The treatment records submitted by the Choctaw Nation Hospital indicate that the claimant continued to see Dr. Howard for treatment after

she left CACMHC in McAlester; there were three telephone contacts (Tr. 206-09, 211, 214-15), and one actual visit (Tr. 210, 212-13), all for medication management and refills. One of these contacts produced written notes (Tr. 210), but otherwise Dr. Howard's "encounter records" state that the claimant's chief complaint was "suppressed for confidentiality" and that even the comments from the visit were "suppressed" (Tr. 206, 208, 212, 214).

On August 10, 2004, Dr. Howard completed a Mental Status Form (Tr. 308). He noted that the claimant "frequently looks sad and confused. She relates well to people initially then poorly." He indicated that her mental status demonstrated "[f]requent poor judgment, rationalization, verbosity, mostly alert, moderately guarded, mood fluctuation, slightly constricted affect, generally below average intelligence, slight problem with poor recall, very anxious." Dr. Howard also found that the claimant was "overly responsive to all stressors" with an "impaired ability to think intermittently." He noted that she "[m]ostly stays at home[,]" that she had an "erratic and often poor" memory, poor comprehension, "a big problem" carrying out instructions, and problems working with others because it "would usually cause [her] to worsen." Dr. Howard diagnosed the claimant as a victim of abuse, with schizoaffective disorder and a polysubstance dependence allegedly in remission. He opined that she could not handle her own funds, and that although "[p]sychopharmacology is helpful[, her c]ompliance is sometimes poor . . . [and m]inimum improvement [is] expected." Dr. Howard also noted that he suspected damage to the claimant's central nervous system due "to physical and chemical insults." (Tr. 308).

On October 6, 2005, Dr. Howard completed a Mental RFC Assessment form regarding the severity of the claimant's mental limitations (Tr. 428-31). He indicated that he had treated the claimant for years, that she had either moderate or marked limitations in all functional areas and that "[s]he frequently uses poor judgment and obtains employment because of her financial problems when she should not because of her severe psychiatric problems and" due to the "side effects of her psychiatric medicines." (Tr. 428-30). Dr. Howard sent a follow-up letter to the claimant's attorney on October 12, 2005 (after the administrative hearing) and reiterated that he had treated the claimant "for several years up to the present time," that he was unaware of any other psychiatric treatment and that he had an appointment with her that very day. Dr. Howard also indicated that the Mental RFC Assessment was based on all of his assessments of her, that he had not written his notes "for the purpose of providing an assessment to the Social Security Administration" and that any medical records should be requested from the Medical Records Department and with an authorization for release signed by the claimant (Tr. 491).

Medical opinions from a treating physician are entitled to controlling weight if they were "well-supported by medically acceptable clinical and laboratory diagnostic techniques [and] consistent with other substantial evidence in the record." *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) [quotation marks omitted]. When a treating physician's opinions are not entitled to controlling weight, the ALJ must nevertheless determine the proper weight to give them

by analyzing all of the factors set forth in 20 C.F.R. § 416.927. *Id.* at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§ 416.927].'"), *quoting Watkins*, 350 F.3d at 1300. Those factors are: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins,* 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001) [quotation omitted]. And if the ALJ decides to reject a treating physician's opinions entirely, he must "give specific, legitimate reasons for doing so[,]" *id*. at 1301 [quotations omitted], so it is "clear to any subsequent reviewers the weight [he] gave to the treating source's medical opinion and the reasons for that weight." *Id*. at 1300.

The ALJ stated that he gave "due consideration" to Dr. Howard's opinions regarding the claimant's "marked functional limitations . . . and . . . medication side effects" but concluded they were not entitled to controlling weight because they were "not well supported by medically acceptable clinical and diagnostic techniques and . . . inconsistent with other substantial medical evidence of record." (Tr. 20). This conclusion was problematic for two

reasons. First, Dr. Howard's observations of the claimant were themselves specific medical findings sufficient to support a psychological opinion without any testing. *See Wise v. Barnhart,* 129 Fed. Appx. 443, 447 (10th Cir. 2005) ("A psychological opinion does not need to be based on 'tests;' those findings can be based on 'observed signs and symptoms.' Dr. Houston's observations of Ms. Wise do constitute specific medical findings.") [unpublished opinion], *citing Robinson v. Barnhart,* 366 F.3d 1078, 1083 (10th Cir. 2004), *citing* 20 C.F.R. subpt. P, app. 1 § 12.00(B). Further, the ALJ failed to specify the inconsistencies he found between Dr. Howard's opinions and the medical evidence of record. *See id.* ("The ALJ also concluded that Dr. Houston's opinion was inconsistent with the credible evidence of record, but he fails to explain what those inconsistencies are.") [quotation marks and citation omitted]. The ALJ may have been referring to the opinions of a state agency physician (which were supportive of the ALJ's disability determination but not entirely inconsistent with Dr. Howard's findings, *e. g.*, both found that some of the claimant's limitations were in the moderate category), but if so the ALJ failed to explain why he favored that medical source over a treating physician. *See, e. g., Reyes v. Bowen*, 845 F.2d 242, 245 (10th Cir. 1988) ("The treating physician's opinion is to be given greater weight than an examining physician's opinion. So, the examining physician's report should be examined to see if it 'outweighs' the treating physician's report, not the other way around.") [citations omitted].

Further, even if Dr. Howard's opinions about the claimant's functional abilities were not entitled to controlling weight, the ALJ was required to analyze the proper weight to give

them based on the factors set forth in 20 C.F.R. § 416.927. In this regard, the ALJ found that: (i) Dr. Howard had a "limited treatment relationship" with the claimant (which seems highly debatable); (ii) Dr. Howard did no clinical testing (which as discussed above was not necessarily required for a psychological opinion); (iii) Dr. Howard's opinions were unsupported by medical evidence in the record (more on this below); (iv) Dr. Howard's opinions were inconsistent with the record as a whole (although the only specific criticism the ALJ mentioned was that "the treatment records do not suppropt [sic] a conclusion that claimant has had severe medication side effects."); (v) Dr. Howard was a mental health specialist (a factor favoring deference to Dr. Howard's opinions that the ALJ seems to have undercut by Dr. Howard's failure to consult with other specialists before rendering his opinions); and, (vi) "Dr. Howard was willing to provide claimant with a disability statement at claimant's request." (Tr. 20).

The last factor seems to have been particularly significant to the ALJ, as he mentioned it again later in the written opinion: "Despite only limited physician/patient contact and limited medical findings, at claimant's request Dr. Howard was willing to provide claimant with what amounts to a statement of total disability." (Tr. 21). The ALJ's focus on this factor suggests he concluded that Dr. Howard rendered his opinions as a courtesy to his patient, which would be an insufficient basis for rejecting such opinions. *See, e. g., Langley,* 373 F.3d 1116, 1121 (10th Cir. 2004) ("The ALJ also improperly rejected Dr. Hjortsvang's opinion based upon his own speculative conclusion that the report was based only on

claimant's subjective complaints and was 'an act of courtesy to a patient.' The ALJ had no legal nor evidentiary basis for either of these findings. Nothing in Dr. Hjortsvang's reports indicates he relied only on claimant's subjective complaints or that his report was merely an act of courtesy."), *quoting McGoffin v. Barnhart,* 288 F.3d 1248, 1252 (10th Cir. 2002) ("In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion*.") [quotation omitted]. The ALJ also criticized Dr. Howard for having "declined to provide requested information" (Tr. 20), presumably in support his finding that Dr. Howard's opinions were unsupported by medical evidence in the record. Assuming *arguendo* this criticism is a fair characterization of Dr. Howard's instructions to the claimant's attorneys about how to obtain medical records, the ALJ should have attempted to obtain the records himself before simply rejecting Dr. Howard's opinions for a lack of evidentiary support. *See, e. g., Carter v. Chater*, 73 F.3d 1019, 1022 (10th Cir. 1996) ("An ALJ has the duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing. The ALJ's only stated reason for discounting Ms. Carter's diagnosis of depression was that there were no medical tests to support it. However, he made no effort to obtain such tests or to determine what testing Dr. Foley might have performed."), *citing Baker v. Bowen,* 886 F.2d 289, 291-92 (10th Cir. 1989). *See also Robinson*, 366 F.3d at 1084 ("If the ALJ concluded that Dr. Baca

failed to provide sufficient support for his conclusions about the claimant's mental limitations, the severity of those limitations, the effect of those limitations on her ability to work, or the effect of prescribed medications on her ability to work, he should have contacted Dr. Baca for clarification of his opinion before rejecting it."). *See generally* 20 C.F.R. § 404.1512(e)(1), 416.912(e)(1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report *does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques*.") [emphasis added].

In summary, the undersigned Magistrate Judge finds the ALJ did not give "due consideration" to Dr. Howard's opinions about the severity of the claimant's functional limitations. Consequently, the decision of the Commissioner should be reversed and the case remanded to the ALJ for a proper analysis of the weight to give Dr. Howard's opinions. If the ALJ finds that there are additional functional limitations, the ALJ should redetermine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

The undersigned Magistrate Judge finds that correct legal standards were not applied by the ALJ and the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the Magistrate Judge RECOMMENDS that the ruling of the Commissioner of the Social Security Administration be REVERSED and the case

REMANDED for further proceedings as set forth above. The parties are herewith given ten (10) days to file any objections with supporting briefs. Failure to object to the Report and Recommendation will preclude appellate review of the judgment of the District Court based on such findings.

**DATED** this 12th day of September, 2008.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**